IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

KRISTEN HART, )
            Plaintiff, )
)
vs. )
) No. 15-6159-CV-SJ-FJG
)
OPAA! FOOD MANAGEMENT, INC. )
)
            Defendant. )

## ORDER

Currently pending before the Court is Defendant Opaa! Food Management, Inc. ("Opaa!'s") Motion for Summary Judgment (Doc. #27), and Plaintiff's Motion to Allow Time for Discovery Under Rule 56(d) (Doc.# 33).

### I. BACKGROUND

Defendant Opaa! submitted a statement of uncontroverted facts in support of its Motion for Summary Judgment. In plaintiff's Memorandum in Support of Motion to Allow Time for Discovery and in Opposition to Opaa!'s Summary Judgment motion, plaintiff does not controvert any of the facts cited by Opaa!x or offer any additional facts. Accordingly, the Court will rely on the facts cited in Opaa!'s motion.

Plaintiff began employment with the St. Joseph School District in 1999. In 1999, plaintiff was a kitchen manager for an elementary school cafeteria. In this role, plaintiff managed the operations of the cafeteria and the staff. For most of plaintiff's tenure, her direct supervisor was the School District's Nutrition Department Supervisor. However, since the beginning of the 2013-2014 school year, that position had been vacant. In late

October 2013 and early November 2013, Opaa! entered into a contract with the School District to provide services related to the management of the District's cafeterias and food service operations. After Opaa! began working with the District, Tonya McCrea was appointed as Opaa!'s Director of Nutritional Services, and became plaintiff's direct supervisor. On September 23, 2013, the school principal sent an email to plaintiff regarding concerns she had about kitchen operations, including complaints made by parents and referencing prior complaints. On September 30, 2013, the principal sent another email to plaintiff regarding a complaint from a parent that a cafeteria worker had taken food away from her child. On December 6, 2013, the principal sent another email to plaintiff, copying Ms. McCrea, complaining about how dirty the lunchroom tables were. On February 24, 2014, Ms. McCrea emailed the principal regarding concerns related to plaintiff's attendance, the frequency of her leaving the building to go to her car and indicating that she intended to take written disciplinary action regarding these issues. On March 17, 2014, plaintiff left work for a doctor's appointment without requesting leave or reporting her need to leave, in violation of policy. On March 18, 2014, plaintiff was issued a written disciplinary notice due to her excessive absences. On August 18, 2014, Ms. McCrea emailed plaintiff a written follow up to a conversation that had occurred that morning regarding a number of concerns with plaintiff's kitchen. Some of the concerns related to fruit being served with stickers on it, employees not wearing hairnets, clothing violations and failure of a team member to attend a required meeting. On August 22, 2014, plaintiff was presented with and signed a Performance Improvement Plan. The plan indicated that plaintiff needed to improve her performance in managerial tasks, ability to manage her staff and her attendance. During the meeting,

plaintiff informed Ms. McCrea that she would be absent on the next business day, August 25, 2014 for a doctor's visit that she had previously known about. Employees were required pursuant to Opaa! and District policy to provide seven days' notice for non-emergency medical appointments. On August 24, 2014, the principal and Ms. McCrea spoke to plaintiff regarding missing money that had been sent in for a child's lunch, but was not deposited for that purpose. On August 25, 2014, plaintiff was issued a written warning for violation of district and Opaa! policy regarding the missing money. On September 12, 2014, an employee in plaintiff's kitchen, approached the assistant director of nutrition regarding plaintiff's treatment of her. The employee was quite upset and expressed dissatisfaction with plaintiff's management, including inconsistencies in instructions given by plaintiff. On September 17, 2014, plaintiff failed to properly complete her inventory for milk, bread and produce. This resulted in another written disciplinary action which mentioned plaintiff's previous problems with conducting inventory. On September 18, 2014, Ms. McCrea, the principal, and district administration employees participated in an email exchange regarding plaintiff's ongoing performance problems, noting that just that morning the cafeteria had run out of a breakfast item. On September 18, 2014, Ms. McCrea, the assistant director of nutrition and the principal met with plaintiff and informed her that she was being demoted from kitchen manager to a "line" staff employee and that her pay was being decreased. Plaintiff was transferred to a high school so that she would not have to work with her prior subordinates at the elementary school. Plaintiff worked at the high school cafeteria for approximately two weeks when she took a leave of absence for medical treatment. After returning only very briefly, plaintiff resigned her position with the district

on November 3, 2014.

Plaintiff in her resignation letter stated that she had been treated unfairly since Opaa! came to the District and that Ms. McCrea "had it out for her." The resignation letter did not mention age or allege that she had been treated badly because of her age. When questioned as to why Ms. McCrea had it out for her, plaintiff testified, "I don't know if it was my age, if she wanted younger people in there, if she wanted people to – I don't know exactly why. If she just didn't like me personally. I wasn't sure. I just felt that way, that she just didn't get along with me for some reason." Plaintiff testified that she believed that her replacement, was approximately thirty-six years of age. Plaintiff was forty-five years of age at the time of her resignation. Plaintiff alleged that there were five other employees who were demoted or terminated and replaced by younger employees. However, plaintiff did not know why any of the five women were demoted and that it was "just [her] opinion" that they were demoted because of their age. Plaintiff could only provide first and last names of two employees allegedly demoted and replaced by younger employees. Plaintiff provided only the first names and schools worked at for the other three employees.

Plaintiff testified that at the time of her resignation, her working conditions were not intolerable. Plaintiff testified that she had no evidence, documents or statements or information of any sort that could support her belief that age was a factor in her demotion. Plaintiff testified that no district employee or Opaa! employee ever told her that she was demoted because of her age nor did anyone ever mention her age in any way.

4

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

## III. DISCUSSION

### A. Plaintiff's Motion For Additional Time for Discovery

Plaintiff filed her Petition in the Circuit Court of Buchanan County on October 9, 2015. Defendants removed the case to federal court on November 16, 2015. On February 5, 2016, the parties conducted their Fed.R.Civ.P. 26 conference. On February 8, 2016,

5

plaintiff served her first requests for discovery to Opaa! and the School District. On February 18 and 19, 2016, Opaa! and the School District served their initial Rule 26 disclosures. Plaintiff served her disclosures on February 22, 2016. On February 24, 2016, the School District served supplemental Rule 26 disclosures. The Court entered a Scheduling and Trial Order on February 25, 2016 setting December 16, 2016 as the date for the close of discovery. On March 30, 2016, Opaa! served responses to plaintiff's discovery requests. On April 8, 2016, the School District filed its responses to plaintiff's discovery requests. Plaintiff's deposition was taken on April 22, 2016. Opaa! filed its Motion for Summary Judgment on June 7, 2016. On June 30, 2016, plaintiff filed her Motion Seeking Additional Time for Discovery and Suggestions in Opposition to the Motion for Summary Judgment. In the motion, plaintiff acknowledges that the parties have engaged in written discovery, have mediated the case and defendants have deposed her. Plaintiff also states that shortly after the mediation, she reached a settlement with the School District.

However, plaintiff states that additional discovery is necessary on the following issues: 1) Plaintiff's employment relationship with Opaa!; 2) the relationship between Opaa! and the School District and whether Opaa! exercised oversight or control over her employment; 3) the names and salaries of all employees working in food service in St. Joseph schools between 2012 and 2015; 4) depositions of Tonya McCrea, Director of Nutrition Services; Linda Schaiffer, Assistant Director of Nutrition Services; Craig Cohen, Senior Vice-President of Operations for Opaa! and Dan Colgan, Superintendent of Schools for the District. Plaintiff states that this discovery is necessary to show Opaa!'s liability as a "joint" employer with the District and also to show that Opaa!

engaged in a "pattern and practice of age discrimination." Attached to her Motion is an affidavit of plaintiff's attorney which states as follows: "1. Additional discovery as outlined in the Memorandum . . .is necessary to afford Plaintiff the adequate opportunity to discover facts as outlined in the aforementioned Memorandum, to present her claim for damages. 2. It is affiant's belief that the information sought is in fact discoverable through discovery, but is not yet available to Plaintiff to produce in response to the pending Motion for Summary Judgment due to the early nature of the discovery process in this litigation."

Fed.R.Civ.P. 56(d) states "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Courts have noted that Rule 56(d) "should be applied with a spirit of liberality." United States ex rel. Bernard v. Casino Magic Corp., 293 F.3d 419, 426 (8th Cir. 2002). "Although Rule 56(d), 'is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious.'" Jacobs v. PT Holdings, Inc., No. 8:11CV106, 2012 WL 705772, *2 (D.Neb. Mar. 2, 2012)(quoting Wilmar Poultry Co. v. Morton-Norwich Prods., Inc., 520 F.2d 289, 297 (8th Cir. 1975)); see also Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997)("Rule 56(f) does not condone a fishing expedition."). In Elkins v. Medco Health Solutions, Inc., No. 4:12CV2141TIA, 2014 WL 1663406, *9 (E.D.Mo. Apr. 25, 2014), the Court stated:

> "To obtain a continuance under [Rule 56(d) ], the movant must show good reason for being unable to present facts essential to its response."

7

> Elnashar v. Speedway SuperAmerica, LLC, 484 F.3d 1046, 1055 (8th Cir.2007). Mere speculation that the nonmoving party controls relevant facts is an insufficient basis for a Rule 56(d) continuance. Davis v. G.N. Mortg. Corp., 396 F.3d 869, 885 (7th Cir. 2005). In addition, a plaintiff who has been "dilatory in pursuing discovery" is generally not entitled to a Rule 56(d) continuance. Snyder v. Livingston, 2012 WL 32984, at *2 (N.D.Ind. Jan. 5, 2012); accord Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for denial of a [Rule 56(d)] motion.").

Id. at *9.

Opaa! raises numerous reasons why the Motion for a Continuance should be denied, such as failure to comply with the affidavit requirement by having counsel submit the affidavit instead of presenting her own affidavit, irrelevancy of the discovery to her claims and the assertion of novel theories which would be barred because they were not raised in her charge of discrimination. Additionally, Opaa! states that plaintiff has had ample opportunity to discover facts relating to her employment relationship and any other facts would be best known by her.

The Court notes that plaintiff did not file Reply Suggestions or respond to any of Opaa!'s arguments regarding the Motion for a Continuance. The Court does not find that this is a situation where plaintiff has had no opportunity to conduct discovery. Rather, as noted above, this case was removed in November 2015, and the parties conducted their Rule 26 conference and exchanged discovery requests in early February 2016. The Scheduling and Trial Order was entered on February 25, 2016, which gave the parties until December 16, 2016 to complete discovery. Thus, plaintiff had over four months from the time the parties conducted their Rule 26 conference until June 2016, when Opaa! filed its Motion for Summary Judgment. Plaintiff offers no explanation for why she could not have noticed the depositions of the employees of

Opaa! and the School District during this time period or why she could have not submitted additional interrogatories or requests for production to defendants seeking the names and salaries of the other food service workers. Plaintiff could have conducted the discovery described above, filed a motion for an extension of time to respond to the Motion for Summary Judgment and sought leave to supplement her response to the Motion for Summary Judgment. Thus, the Court finds that plaintiff has failed to offer an explanation as to why she couldn't have conducted the discovery she seeks in the time period between February and June 2016. Additionally, the Court also finds that the reasons advanced by plaintiff do not justify granting such a continuance.

Plantiff states that further discovery is necessary on the issue of her employment relationship with Opaa!. Plaintiff states that Opaa! has alleged that she was not their employee and that further discovery is necessary regarding the business relationship between Opaa! and the School District because they could be considered a "joint employer." She states that she needs additional discovery to establish the amount of oversight and involvement Opaa! had as it related to her employment. Opaa! states that plaintiff herself would be the most knowledgeable regarding her employment and how much control and oversight Opaa! employees exercised over her. Plaintiff testified in her deposition that she did not consider herself to be an Opaa! employee. Opaa! states that plaintiff has had ample opportunity to provide further affidavit testimony should she wish to do so and has had the benefit of written discovery from Opaa! and the School District on this subject. Thus, the Court finds that plaintiff has failed to identify any specific facts that she could obtain through additional discovery which would demonstrate that Opaa! was her employer.

9

Plaintiff also argues that she believes that "discovery of the names and salaries of all employees working in food service schools that made up the St. Joseph, Missouri School District from 2012 through 2015 is necessary to assist in demonstrating the pattern and practice of the age discrimination that occurred." (Motion for Continuance, p. 4). Plaintiff makes this argument with regard to her claims for Age Discrimination under the ADEA, MHRA and her claim for Constructive Discharge. The Court finds that any discovery regarding the name and salaries of the food service workers would be irrelevant to plaintiff's claims for three reasons: 1) plaintiff has not raised a "pattern or practice" claim; 2) demoting or firing workers simply due to the fact that they were paid more is not illegal discrimination and 3) the information is not relevant to plaintiff's claims against Opaa!. First, as one commentator has noted, "[a] pattern or practice claim is one type of systemic disparate treatment claim in which the plaintiff alleges that an employer 'regularly and purposefully' engaged in discrimination against a class of employees protected by Title VII. . . .Moreover, private plaintiffs asserting a pattern or practice of discrimination under Title VII generally seek class-wide relief and, therefore, must seek certification under Federal Rule of Civil Procedure 23."[1] In the instant case, plaintiff has not asserted a class action pattern or practice type of claim. Instead, she has only brought a disparate treatment claim against Opaa! and the District on her own behalf. Additionally, Opaa! argues plaintiff failed to assert any type of pattern and practice claim in her charge of discrimination, so even if she were attempting to make such a claim, she has failed to exhaust her administrative remedies regarding this claim because she did not raise it in her charge of discrimination.

---

[1] A. Morrison, Duke-ing Out Pattern or Practice After Wal-Mart: The EEOC As Fist, 63 Am.U.L.Rev. 87, 93 (Oct. 2013).

Secondly, any evidence relating to the salaries of other workers would not show that Opaa! discriminated against plaintiff on the basis of her age. Hazen Paper Co. v. Biggins, 507 U.S. 604, 613 (1993)("Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'"); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1125-26 (7th Cir.1994)("[Plaintiff] could not prove age discrimination even if he was fired simply because [Employer] desired to reduce its salary costs by discharging him."); Schroeder v. Shawano County, 870 F.Supp.2d 622, 630 (E.D.Wis. 2012)(Plaintiff alleged that the County treated her differently than younger employees to save money, but this is not actionable under ADEA.); (Williams v. City of New York, No. 12:CIV8518(RJS), 2014 WL 1383661, *11 (S.D.N.Y. Mar. 26, 2014), aff'd, 602 Fed.Appx. 28 (2015)(same). Thus, the Court finds that granting a continuance to allow plaintiff time to request the names and salaries of all food service employees in the district would not support her claim that she was terminated because of her age, because "while seniority may be 'empirically correlated' with age, it is 'analytically distinct', such that discrimination on the basis of the former does not necessarily constitute discrimination on the basis of the latter. . . .An employer who fires an employee solely to save money . . .does not, for that reason alone, engage in age discrimination under the ADEA." Williams, Id. at *11(quoting Hazen, 507 U.S. at 608-110).

Finally, the Court also finds that such a continuance is not necessary because any evidence of the names and salaries of the other food service workers is not relevant to plaintiff's claims against Opaa!. Opaa! states that it has never been accused of having

11

paid or set the salaries for any district employees. Opaa! did not even begin working in the District until late 2013. The Court agrees and finds that this information is not relevant to plaintiff's claims against Opaa!. Thus, because plaintiff has had ample time to conduct the requested discovery and has failed to offer any reasons why she could have obtain the requested information and also because the information requested is not relevant to plaintiff's claims against Opaa!, there is no basis on which to grant the Motion for a Continuance. Thus, the Court finds that Opaa!'s Motion for Summary Judgment is ripe for consideration and will proceed to consider it.

### B. Defendant's Motion for Summary Judgment

### 1. Can Opaa! Be Considered Plaintiff's Employer ?

Opaa! argues that summary judgment should be granted in its favor because while it is *an* employer as that term is defined in by the ADEA and the MHRA, Opaa! was never plaintiff's employer. Plaintiff was hired by the School District in 1999, she was at all times paid by the district and Opaa! did not issue her tax documents or pay employment taxes for her. Opaa! also states that it lacked the authority to hire, fire, promote or demote plaintiff. Plaintiff also stated in her deposition that she did not consider herself to be an employee of Opaa!.

In Diaz v. Autozoners, 484 S.W.3d 64 (Mo.App.2015), the Court notes that the MHRA defines "employer" as "any person employing six or more persons within the state, and any person directly acting in the interest of an employer." Mo.Rev.Stat. § 213.010(7). "Person" for purposes of the statute "acting directly in the interest of an employer" has been defined to include both individuals and corporations. Mo.Rev.Stat. § 213.010(14). In Diaz, the Court stated that when applying the economic realities test

12

in the context of the MHRA, it must be modified to account for the statutory requirement that an entity that is not the employer-in-fact "directly act[s] in the interest of" the employer-in-fact. Mo.Rev.Stat.§ 213.010(7). The Court stated that the following factors should be considered:

> (1) Who was responsible for establishing policies and training employees concerning harassment; (2) who was responsible for receiving, investigating, and responding to harassment complaints; and (3) who had the power to discipline employees who may have failed to comply with anti-harassment policies. These factors are relevant to determining whether an entity may be properly considered an "employer" for purposes of the MHRA, because it is only when these factors are present that an entity can be deemed to be "directly acting in the interest of an employer," as that phrase has been interpreted in prior cases.

Diaz, 484 S.W.2d at 80. In Kossmeyer v. Lillibridge Healthcare Services, Inc., No. 4:14CV1748HEA, 2015 WL 1976273 (E.D.Mo. Apr. 30, 2015), the Court stated:

> In determining whether a "joint employer" relationship exists, the Eighth Circuit considers four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relationship; and (4) common ownership or financial control. . . .No single factor is outcome determinative.

Id. at *3 (internal citations omitted). The parties did not discuss any of the factors referenced in either of the cases above or engage in any analysis of whether Opaa! could be considered to be "acting in the interests of the employer" or considered a "joint employer." The Court need not make a determination on this issue and will for purposes of considering the summary judgment motion assume that Opaa! was plaintiff's employer.

### 2. ADEA Claim

The ADEA makes it "unlawful for an employer . . .to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms,

13

Case 5:15-cv-06159-FJG   Document 41   Filed 03/24/17   Page 13 of 19

conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623 (a)(1). Plaintiff can meet her burden of showing intentional discrimination through either direct or indirect evidence.

> In cases involving indirect evidence of age discrimination, courts apply the burden shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). . . .Under the <u>McDonnell Douglas</u> framework, Plaintiff must first establish a prima facie case of age discrimination. . . .To establish a prima facie case of age discrimination, Plaintiff must show (1) [s]he is a member of a protected age group; (2) [s]he was performing [her] job at a level that met Defendant's legitimate expectations; (3) [s]he was terminated; and (4) [s]he was replaced by a younger person. . . .A plaintiff may create an inference of age-based discrimination by showing that similarly-situated employees outside the protected class were treated more favorably. . . .However, to do so, a plaintiff must show that the other employees were similarly situated in all relevant respects. . . .Individuals used for comparison must have dealt with the same supervisors, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. . . .If Plaintiff establishes a prima facie case of age discrimination, then the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for any adverse employment action taken against Plaintiff.

<u>Gafford v. McDonald</u>, No. 4:14-cv-01603-JAR, 2016 WL 7242159,*7-8, (E.D.Mo. Dec. 15, 2016)(internal citations omitted).

In the instant case, Opaa! argues that plaintiff has no direct evidence of discrimination, so the Court must determine whether plaintiff has asserted a prima facie claim of age discrimination. The parties do not contest that plaintiff is over the age of forty and is thus a member of the protected age group. Opaa! argues however that plaintiff cannot show that she was meeting the legitimate expectations of her position or that she was replaced by a significantly younger person.

As discussed above, beginning in the fall of 2013, the principal sent emails to plaintiff complaining about issues related to the lunch service and how students were being served. Beginning in December 2013, the principal began copying Tonya McCrea

regarding the complaints. In February, Tonya notified the principal that she is going to give plaintiff a written warning. On March 18, 2014, plaintiff was issued a written disciplinary notice due to her excessive absences. In April 2014, plaintiff failed to call in before she left work for a doctor's appointment. Issues with plaintiff's performance continued into the following school year. On August 18, 2014, Tonya McCrea emailed plaintiff noting several concerns regarding service of the food, failure of kitchen staff to wear hairnets and not wearing appropriate clothing and failing to ensure that a staff member attended a meeting. On August 22, 2014, plaintiff was placed on a Performance Improvement Plan. The plan stated that plaintiff needed to improve her performance in managerial tasks, ability to manage staff and her attendance. During the meeting on August 22, 2014, plaintiff informed Ms. McCrea and her assistant, that she would be absent on August 25, 2014 for a doctor's appointment. Plaintiff had known about the appointment in advance and was in violation of District policy for failing to provide seven days' prior notice of the appointment. On August 25, 2014, the principal and Ms. McCrea spoke to plaintiff about missing money that had been sent in for a child's lunch account. On August 25, 2014, plaintiff was issued a written warning for violation of the District and Opaa!'s policies regarding the missing money. On September 12, 2014, an employee in plaintiff's kitchen, complained about plaintiff's treatment of her. On September 17, 2014, plaintiff failed to properly complete her food inventory, which resulted in a written disciplinary documentation. On September 18, 2014, plaintiff was demoted from her position as a kitchen manager to a line staff employee and her pay was decreased. Plaintiff was also transferred to a different school. Opaa! argues that plaintiff has failed to produce any evidence to suggest that

she was meeting the legitimate expectations of her position at the time of her demotion. The Court agrees and finds that plaintiff has not met the second element of her prima facie claim.

With regard to the third element, Opaa! argues that plaintiff cannot establish that she was replaced by a significantly younger employee. Plaintiff stated in her deposition that she was replaced by Heather Taylor, who plaintiff believed to be thirty-six years of age. At the time that plaintiff was demoted, she was forty-five years of age. Opaa! argues that a nine year age difference has been found not to be enough to infer age discrimination. In Girten v. McRentals, Inc., 337 F.3d 979, 982 (8th Cir. 2003), the Court stated, "[t]he nine-year age difference between [plaintiff] and his replacement may not be sufficient to infer age discrimination." In Savoie v. Genpak, LLC, No. 13-1229(DWF/SER), 2014 WL 6901783 (D.Minn. Dec. 5, 2014), the Court stated, "the Eighth Circuit not only requires the employee to be replaced by someone younger, but someone who is substantially younger. . . .Courts have reasoned that evidence of a *substantial* age difference reasonably allows the conclusion that the plaintiff's age factored into the employer's decision." Id. at *5 (internal citations and quotations omitted). The Court agrees and finds that the nine year gap between plaintiff and her replacement is too small to show that she was replaced by a "substantially younger" employee. Accordingly, the Court finds that plaintiff has failed to establish the second and fourth prima facie elements of an ADEA claim. Thus Opaa! is entitled to summary judgment on this claim.

### 3. MHRA Claim

[T]he MHRA employs a more lenient standard that the ADEA in determining whether an employee has been discriminated against. . . .To

16

Case 5:15-cv-06159-FJG   Document 41   Filed 03/24/17   Page 16 of 19

> survive summary judgment on the MHRA claim, [the plaintiff] must
> demonstrate that age was a contributing factor in the decision to promote
> others instead of him. . . .A contributing factor has been defined as one
> that contributed a share in anything or has a part in producing the effect.

Lin Gao v. St. Louis Language Immersion Schools, Inc., No. 4:13-CV-1956-SPM, 2014 WL 6871166, *8 (E.D.Mo. Dec. 5, 2014) aff'd, 607 Fed.Appx. 621 (8th Cir. 2015)(internal citations and quotations omitted).

When asked in her deposition to explain why she felt that she was not treated fairly or justly by her supervisors, plaintiff responded: "I just felt that they, Ms. McCrea seemed to have it out for me." When asked why she believed this, plaintiff responded: "I don't know if it was my age, if she wanted younger people in there, if she wanted people to – I don't know exactly why. If she just didn't like me personally. I wasn't sure. I just felt that way, that she just didn't get along with me for some reason." When asked besides the fact that her replacement was younger, what else led her to believe that age had anything to do with Ms. McCrea's treatment, plaintiff responded, "I'm not sure." (Plaintiff's Depo. Ex. 2, pp. 104-105). When asked why she believed that age played a role in the defendant's actions, plaintiff responded: "I think they were trying to cut costs by getting rid of older employees that made more money than the younger ones did." When asked besides this belief, if she had any other evidence in documents, statements or information of any sort that supported that belief, plaintiff responded, "No." (Ex. 2, p. 136). When plaintiff was asked if anyone at Opaa! or the School District ever said anything to her about her age or that she was demoted because of her age, plaintiff replied "No." When asked if any superior ever said anything to her about her age, plaintiff replied "No." (Ex. 2, pp. 198-199). In Lin Gao, the Court found that plaintiff had no evidence other than her own unsworn and unsupported allegations that age

17

played any role in the defendant's decisions. Thus, the Court in that case found that plaintiff had failed to create any genuine issue of fact as to whether plaintiff's age was a contributing factor. Similarly, in this case, the Court also finds that plaintiff has offered nothing other than her own belief that age was a factor in her demotion. However, plaintiff even admitted that she wasn't exactly sure why she felt that Ms. McCrea "had it out for her" stating that it could have been her age or just simply because she did not like her personally. The Court finds that this is insufficient to show that age was a contributing factor to plaintiff's demotion. Accordingly, the Court finds that Opaa! is entitled to summary judgment on plaintiff's MHRA Claim.

### 4. Constructive Discharge Claim

> To establish a case of constructive discharge, [plaintiff] must show that (1) a reasonable person in her situation would find the working conditions intolerable, and (2) the employer intended to force her to quit. An employee must, however, grant her employer a reasonable opportunity to correct the intolerable condition before she terminates her employment . . . The Eight Circuit Court of Appeals has consistently recognized that an employee is not constructively discharged if she quits without giving [her] employer a reasonable chance to work out a problem.

Blake v. MJ Optical, Inc., No. 8:14CV317, 2016 WL 3351919,*6 (D.Neb. Apr. 13, 2016)(internal citations and quotations omitted). The Court finds that plaintiff has failed to state the elements of a constructive discharge claim. When asked what about working at the high school she found to be intolerable, plaintiff responded that she was only there for a short time and that it was humiliating to no longer be a manager. However, when asked if she felt it was intolerable, plaintiff responded, "I wouldn't say intolerable, no. I didn't use that word." (Ex. 2, p. 128). When plaintiff was asked what the defendants had done to make her resign from her position, she replied, "Nothing." (Ex. 2, p. 137). When plaintiff was asked about her transfer from the elementary to the high

18

school after she was demoted, and whether she considered the transfer itself to be a problem, plaintiff responded "No." When asked if she saw it as a negative action, she responded "No." (Ex. 2, p. 197). Thus, the Court finds that plaintiff has failed to show that a reasonable person in her situation would find the working conditions intolerable or that Opaa! intended to force her to quit by transferring her to a different position at a different school. Accordingly, the Court finds that Opaa! is entitled to summary judgment on plaintiff's Constructive Discharge claim.

## I. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **GRANTS** Defendant Opaa! Food Management, Inc.'s ("Opaa!") Motion for Summary Judgment (Doc. #27) and **DENIES** Plaintiff's Motion to Allow Time for Discovery Under Rule 56(d) (Doc.# 33).


Date: <u>March 24, 2017</u>　　　　　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge